UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| VICTOR GONZALEZ-LAMAS, | ) | |
| Institutional ID No. 69410-097, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-124-BG |
| S McADAMS, Senior Warden | ) | ECF |
| at Dalby Facility, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Victor Gonzalez-Lamas filed this civil rights action *in forma pauperis* on July 16, 2014, complaining of events that occurred during his incarceration at the Giles W. Dalby Correctional Facility (Dalby Facility), a private correctional facility operated by Management Training Corporation pursuant to a contract with the Federal Bureau of Prisons (BOP). He claims that the Defendants acted with deliberate indifference to his serious medical needs, and he seeks injunctive and declaratory relief.

The United States District Court transferred this case on September 12, 2014, to the undersigned United States Magistrate Judge for further proceedings. The undersigned thereafter reviewed authenticated records from the Dalby Facility and on December 12, 2014, entered an order to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Gonzalez-Lamas completed and returned the questionnaire on December 29, 2014 (ECF No. 11). But he has not consented to proceed before the undersigned magistrate judge. Accordingly, the undersigned recommends that this action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

**Standard of Review**

A court must dismiss a complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2015); *see also* § 1915A(b) (applying to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, answers obtained through a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).

**Discussion**

At the outset, the court notes that Gonzalez-Lamas was released from the custody of the BOP on January 5, 2015. *See* Find an Inmate, *Federal Bureau of Prisons*, http://www.bop.gov/inmateloc/. Indeed, Gonzalez-Lamas reported an updated address to the court in his responses to the questionnaire on December 29, 2014. Gonzalez-Lamas seeks purely injunctive and declaratory relief for his claims against the Dalby Facility; therefore, his claims are moot because he has been released from prison and is no longer incarcerated at the Dalby Facility. *See, e.g.*, *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (noting that the "transfer of a prisoner out of an institution often will render his claims for injunctive relief moot"); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)

(concluding that prisoner's claims for injunctive and declaratory relief were moot because prisoner had been transferred to another facility).

But even assuming Gonzalez-Lamas could pursue his claims, his allegations fail to state an Eighth Amendment violation. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To allege a constitutional violation, an inmate must show that the prison official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id*. "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (internal quotation marks omitted).

To establish deliberate indifference, a prisoner must show more than mere negligence on the part of the defendants. *See id.* at 347 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."). "A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). A mere disagreement with the course of medical treatment, however, does not state a claim for deliberate indifference. *See Gobert*, 463 F.3d at 346–47; *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999).

In this case, Gonzalez-Lamas has failed to show that the Defendants refused to treat him, ignored his complaints, or otherwise treated him improperly. Gonzalez-Lamas claims that the Dalby

Facility medical department, and specifically Nurse Medford, failed to provide him with proper medical care, which has caused him significant harm. Specifically, he alleges that the Dalby Facility refused to refer him to a specialist for examination and treatment of back pain. Instead, they have only prescribed him the pain relievers, which he alleges are causing harm to his kidneys and do not relieve his pain.

Gonzalez-Lamas may disagree with the course of treatment that the Dalby Facility undertook for his back pain; however, the authenticated records show that Gonzalez-Lamas was evaluated by Dalby Facility medical staff on numerous occasions for complaints of pain related to his back. On April 23, 2013, Gonzalez-Lamas was first seen for complaints of back pain. He was prescribed ibuprofen at that time. On June 14, 2013, Gonzalez-Lamas was examined by Nurse Medford for complaints of back pain. Nurse Medford noted that Gonzalez-Lamas had received x-rays of his back, and she explained to him that the x-rays revealed he had mild degenerative disease in his back. Nurse Medford noted that his gait was steady and he had full range of motion; she prescribed naproxen and recommended a follow-up examination in one month. In his responses to the questionnaire, Gonzalez-Lamas agreed that he had received x-rays of his back and that the results were explained to him.

On October 11, 2013, Gonzalez-Lamas was again evaluated by Nurse Medford, who noted that he had a steady gait and full range of motion. She also noted that he requested a full physical and back examination. Nurse Medford prescribed mobic, a different pain reliever, because Gonzalez-Lamas had complained the naproxen was not relieving his pain. Gonzalez-Lamas returned to the medical department on December 3, 2013, to obtain a prescription renewal for mobic. He reported to Nurse Medford that he was experiencing pain at a level of two on a scale of one to ten.

4

Nurse Medford noted that the prior x-ray had revealed Gonzalez-Lamas had mild degenerative disease in his back but he had a full range of motion and a steady gait. She also noted that Gonzalez-Lamas was active and played soccer, that he was requesting "back repair," but she did not recommend surgery at that time. She renewed his prescription for mobic.

On February 14, 2014, Gonzalez-Lamas submitted a sick call to have his prescription for mobic renewed, but when he arrived at his appointment, he told Nurse Medford the mobic was not relieving his back pain. He requested more x-rays, stating that he had fallen in August 2013, and requested stronger pain medication. Nurse Medford noted that Gonzalez-Lamas did not need further x-rays at that time. On February 28, 2014, Nurse Medford discontinued Gonzalez-Lamas's prescription for mobic and prescribed naproxen instead. In the responses to the questionnaire, Gonzalez-Lamas agreed that Nurse Medford had prescribed naproxen and confirmed that he was still taking naproxen, but he stated that he needed a stronger medication to ease his pain. On April 18, 2014, Gonzalez-Lamas submitted another sick call, requesting a renewal of the naproxen prescription and stating that "it's the only pill that helps with [my] pain."

On July 3, 2014, Dr. Hanford evaluated Gonzalez-Lamas for complaints of back pain, and he noted that Gonzalez-Lamas ambulated well, had no muscle atrophy, good motion in his thoracic and lumbar spine, could touch his toes well, had normal shoulder motion, and his cranial nerves were intact. Dr. Hanford referred Gonzalez-Lamas to receive updated x-rays. On August 14, 2014, Dr. Hanford examined Gonzalez-Lamas again, and noted that the x-rays needed to be repeated to give a better view of the lateral spine. He also noted that neither a surgical consult nor surgery was needed at that time, but Gonzalez-Lamas could continue taking the naproxen. Gonzalez-Lamas confirmed in his responses to the questionnaire that he receive x-rays in July and August 2014.

In his Complaint, the grievance forms attached to his Complaint, and throughout his medical records, Gonzalez-Lamas has requested a referral to a specialist and surgery to cure his back pain. However, Dr. Hanford and Nurse Medford both determined that surgery was not required. A healthcare provider's decision as to the appropriate course of treatment "is a classic example of a matter of medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Although Gonzalez-Lamas may disagree with the Dalby Facility medical staff's diagnoses and method of treatment, mere disagreement does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346.

Based on the collective medical records as discussed above, the evidence does not show that any of the Defendants were deliberately indifferent to Gonzalez-Lamas's serious medical needs. Medical records of sick calls and other examinations or diagnoses "may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Indeed, the authenticated medical records show that Gonzalez-Lamas's complaints of back pain were evaluated on numerous occasions, and he was prescribed various pain medications to alleviate his pain. In sum, Gonzalez-Lamas has not shown that the Defendants refused to treat him or ignored his complaints in wanton disregard for his serious medical needs. *See Gobert*, 463 F.3d at 346.

In his Complaint, Gonzalez-Lamas names Warden McAdams and Associate Warden Bond as Defendants. He alleges that the Warden and Associate Warden have supervisory liability. In the responses to the questionnaire, Gonzalez-Lamas specifically states that he never had personal contact with Warden McAdams or Associate Warden Bond; he is merely suing them in their roles as supervisors.

Liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S.

662, 676 (2009) (citing *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) ("[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). A supervisory official may be held liable only if: (1) he personally participated in acts that violated the plaintiff's constitutional rights; (2) a sufficient causal connection exists between his wrongful conduct and the constitutional violation; or (3) he implemented an unconstitutional policy that directly resulted in injury to the plaintiff. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). In addition, a supervisory official may be liable if the supervisor either failed to supervise or train the subordinate official. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

As discussed above, Gonzalez-Lamas has failed to establish a claim for deliberate indifference to serious medical needs. Without a constitutional violation, he is unable to state a claim against Warden McAdams or Associate Warden Bond based on supervisory liability, in their individual capacity or otherwise. *See Thompkins*, 828 F.2d at 303–04; *Porter*, 659 F.3d at 446. Moreover, Gonzalez-Lamas has not alleged that Warden McAdams or Associate Warden Bond were personally involved in any deprivation of his rights, nor has he alleged that they implemented an unconstitutional policy or that the Dalby Facility medical staff acted pursuant to any such policy. Thus, even if there had been a violation of his constitutional rights—which the undersigned has already concluded there has not been—Gonzalez-Lamas has failed to establish a claim against Warden McAdams or Associate Warden Bond. Accordingly, his claims against Warden McAdams and Associate Warden Bond in their individual capacities—and in their official capacities, to the extent Gonzalez-Lamas sues them in such capacity—must therefore be dismissed. *See Thompson*

*v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

In sum, Gonzalez-Lamas has not established that the Defendants acted with deliberate indifference to his serious medical needs that would warrant injunctive or any other form of relief.

## II.     Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Gonzalez-Lamas's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## III.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   April 23, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge

9